# EXHIBIT A

 **Wolters Kluwer**

**CT Corporation**
**Service of Process Notification**
07/21/2025
CT Log Number 549668473

## Service of Process Transmittal Summary

**TO:**    Legal Sop
Lyft, Inc.
185 BERRY ST STE 400
SAN FRANCISCO, CA 94107-1725

**RE:**    **Process Served in Georgia**

**FOR:**    Lyft, Inc.  (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Re: ARDALAN KARBASYOUN // To: Lyft, Inc. |
| **DOCUMENT(S) SERVED:** | Entry, Summons, Complaint and Demand, Verification, Attachment |
| **COURT/AGENCY:** | Gwinnett County Superior Court, GA<br>Case # 25A064714 |
| **NATURE OF ACTION:** | Employee Litigation |
| **PROCESS SERVED ON:** | C T Corporation System, Lawrenceville, GA |
| **DATE/METHOD OF SERVICE:** | By Process Server on 07/21/2025 at 11:56 |
| **JURISDICTION SERVED:** | Georgia |
| **APPEARANCE OR ANSWER DUE:** | Within 30 days after service of this summons upon you (Document(s) may contain additional answer dates) |
| **ATTORNEY(S)/SENDER(S):** | ARDALAN KARBASYOUN<br>3505 PALISADE LAKE DR<br>DULUTH, GA 30096<br>470-399-7200 |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 07/22/2025, Expected Purge Date: 07/27/2025<br><br>Image SOP<br><br>Email Notification,  John Pellegrini  jpellegrini@lyft.com<br><br>Email Notification,  Christopher Youngblood  cyoungblood@lyft.com<br><br>Email Notification,  Eboni James  ebonijames@lyft.com<br><br>Email Notification,  Ty Lim  tlim@lyft.com<br><br>Email Notification,  Legal Sop  legal-sop@lyft.com<br><br>Email Notification,  Zermani Kadiam  zkadiam@lyft.com |
| **REGISTERED AGENT CONTACT:** | C T Corporation System<br>289 S. Culver St.<br>Lawrenceville, GA 30046<br>8775647529<br>MajorAccountTeam2@wolterskluwer.com |

Page 1 of  2



| | |
|---|---|
| **REMARKS:** | Due to the illegible condition of the enclosed documents, CTs transmittal may be incomplete. |

The information contained in this Transmittal is provided by CT for quick reference only. It does not constitute a legal opinion, and should not otherwise be relied on, as to the nature of action, the amount of damages, the answer date, or any other information contained in the included documents. The recipient(s) of this form is responsible for reviewing and interpreting the included documents and taking appropriate action, including consulting with its legal and other advisors as necessary. CT disclaims all liability for the information contained in this form, including for any omissions or inaccuracies that may be contained therein.



# PROCESS SERVER DELIVERY DETAILS

**Date:**                                    Mon, Jul 21, 2025
**Server Name:**                             Drop Service

| Entity Served | LYFT INC |
|---|---|
| Case Number | 25-A-06471-4 |
| Jurisdiction | GA |

| Inserts | | |
|---|---|---|
| | | |





☑ Please note that the documents attached are of poor quality and the enclosed scan is of the best quality attainable.  If you require improved quality documents, please contact the serving party.

Civil Action No. 25 A n 6+ 71-4

Date Filed -, i / 16 / 2 5

| Magistrate Court | ☐ |
| Superior Court | ☑ |
| State Court | ☐ |

**Georgia, Gwinnett County**

Attorney's Address

- Ardalan  Karbasyoun

3 5, B i n t i S a d e ( L a k e  D r, D 6 / l u t h,

G A, 3 c . 9 6  *Plaintiff*

VS.

L y f t . I n C

2 3 9 S ( r i l v e r  S t  L a w r e n c e V i l l.

C A, 3 o o + 6  *Defendant*

Name and Address of party to be served.

L y f t . i n c  2 8 9  S . C a l v e r  S t

L a w r e n c e v i l l e,  G A, 3 . + 6

*Garnishee*

## Sheriff's Entry Of Service

**Personal** ☐
I have this day served the defendant _____ personally with a copy of the within action and summons.

**Notorious** ☐
I have this day served the defendant _____ by leaving a copy of the action and summons at his most notorious place of abode in this County.

Delivered same into hands of _____ described as follows age, about _____ years; weight, about _____ pounds; height, about _____ feet and _____ inches; domiciled at the residence of defendant.

**Corporation** ☑
Served the defendant  L y f t  I n c  _____ a corporation by leaving a copy of the within action and summons with  J a n e  K i c h a r s o n  _____ in charge of the office and place of doing business of said Corporation in this County.

**Tack & Mail** ☐
I have this day served the above styled affidavit and summons on the defendant(s) by posting a copy of the same to the door of the premises designated in said affidavit, and on the same day of such posting by depositing a true copy of same in the United States Mail, First Class in an envelope properly addressed to the defendant(s) at the address shown in said summons, with adequate postage affixed thereon containing notice to the defendant(s) to answer said summons at the place stated in the summons.

**Non Est** ☐
Diligent search made and defendant _____ not to be found in the jurisdiction of this Court.

This _____ 21 _____ day of _____ July, 20 25

L.t. Hi g g i n s  Sc.541
**Deputy**

Sheriff Docket_____ Page_____

**Gwinnett County, Georgia**

WHITE: Clerk     CANARY: Plaintiff / Attorney     PINK: Defendant

SC-2 Rev.3.13

FILED IN OFFICE
CLERK SUPERIOR COURT
GWINNETT COUNTY, GA

2025 JUL 16 PM 3:21

TIANA P. GARNER, CLERK

## IN THE SUPERIOR COURT OF GWINNETT COUNTY

## STATE OF GEORGIA

Ardalan Karbasyoun

**Plaintiff**

v.

LYFT INC

**Defendant**

Civil Action No. ___25 A  06477-4___

## SUMMONS

TO THE ABOVE NAMED DEFENDANT:

You are hereby required to file with the Clerk of said Court and serve upon the plaintiff or plaintiff's attorney, whose name, address and email address are:

Ardalan  Karbasyoun

~~3505 PALISADE LAKE DR DULUTH, GA 30096~~
EMAIL: AKARBASYOUN@GMAIL.COM
CELL: 470 399 7200

an answer to the complaint which is hereby served on you. You must make your answer within 30 days after service of this summons upon you. This time excludes the day of service. If you fail to answer, the court will issue a default judgment against you for the relief sought in the complaint.

If this action pertains to a Protective Order, the answer is to be filed and served on or before the scheduled hearing date attached.

This 16 day of July, 2025.

Tiana P. Garner
Clerk of Superior Court

By Nadia Trigoso
Deputy Clerk

[Attach addendum sheet for additional parties, if needed. You must make a notation on this sheet if used.]

SC-1
Rev'd 1/25

FILED IN OFFICE
CLERK SUPERIOR COURT
GWINNETT COUNTY, GA

2025 JUL 16 PM 3: 22

TIANA P. GARNER, CLERK

# IN THE SUPERIOR COURT OF GWINNETTCOUNTY

## STATE OF GEROGIA

| | |
|---|---|
| ARDALAN KARBASYOUN<br><br>PLAINTIFF<br><br>V<br><br>LYFT, INC<br><br>DEFENDNAT | CIVIL ACTION NUMBER:<br><br>**25A 06471-4** |

## ~~COMPLAINT~~ COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

Plaintiff Ardalan Karbasyoun (hereafter "Plaintiff") brings this action on behalf of himself, and all others similarly situated against Defendants Lyft, Inc. (hereafter "Lyft") and Does 1-10 (hereafter "Doe Defendants") (collectively, "Defendants").

### SUMMARY OF CLAIMS

1. Plaintiff is a driver for Defendant Lyft, Inc. ("Lyft" or "Defendant"). He brings this action on behalf of himself, to recover lost wages, reimbursement of expenses, and other relief resulting from Lyft's willful decision to misclassify him and other drivers as independent contractors.

2. Plaintiff alleges that Lyft has violated and continues to violate the Fair

Labor Standards Act ("FLSA"), the Georgia Labor Code, and Georgia's Unfair Competition Law ("UCL"), which protect Plaintiff and other drivers from being misclassified. These violations include the failure to: (1) reimburse Plaintiff for his expenses, (2) pay overtime, (3) pay minimum wage, (4) provide itemized wage statements, and (5) keep accurate payroll records.

3. Plaintiff brings his claims under the Georgia Labor Code, Wage Order, and the UCL, on behalf of all Lyft drivers who worked in Georgia between July 2, 2016, through the date final disposition of this action (the "Class").

4. Plaintiff also brings claims under the FLSA, 29 U.S.C. §§ 201 et seq. and 29 U.S.C. § 216(b) on behalf of all Lyft drivers who worked in Georgia between the period beginning 3 years prior to the filing of this action through the date of its final disposition (the "Collective")

5. Plaintiff has **NOT** consented to Lyft's Terms of Service ("TOS") when he signed up to become a Lyft driver.

There is no arbitration contract between the plaintiff and the defendant. At the time that defendant was forcing the majority of drivers to sign the arbitration agreement plaintiff's app was deactivated and plaintiff did not work for a period of time.

## THE PARTIES

6. PLAINTIFF Ardalan Karbasyoun is a resident of Atlanta, Fulton County,

   Georgia. He has been a Lyft Driver since 2016, operating in Georgia.

7. Defendant Lyft owns and operates the Lyft ride sharing service and is

   authorized to and does conduct business throughout the State of Georgia.

   Defendant maintains a registered office at 289 S. Culver Street

   Lawrenceville, GA, 30046-4805 and its registered agent in Georgia is CT

   Corporation System.

   Plaintiff alleges on information and belief that: (1) each Defendant acted in

   all matters relevant to this action as the agent of the other Defendant and

   carried out joint business plans and operations; and (2) the acts and

   omissions of each Defendant are legally attributable to the other Defendant.

## FACTUAL BACKGROUND

A. Plaintiff Is an Employee of Lyft Under the FLSA and Georgia Law

8. Lyft is an App-based transportation provider that has been based in San Francisco, California since 2012. In March 2019, Lyft's shares were offered to the public and now trade on the NASDAQ stock exchange.

9. Lyft's business. Lyft provides riders with transportation by assigning Lyft drivers to riders using a mobile phone application (the "Lyft App").

10. The driver then transports the rider, and the rider pays Lyft for the service with a credit card via the Lyft App.

11. Lyft sets the fare to be paid by the rider and communicates it to the rider via the App.

12. On information and belief, Lyft pays the driver a percentage of the ride fare plus 100% of any added tip, with Lyft keeping the rest of the fare for itself.

13. The work that Lyft drivers perform is in the usual course of Lyft's business – indeed, providing driving services is Lyft's business.

14. Lyft says that it "is one of the largest and fastest growing multimodal transportation networks in the United States." See Lyft, Inc., Securities and Exchange Commission Form S-1 Registration Statement,2 at p. 1 (March 1, 2019) ("S-1 Statement").

15. Lyft drivers, including Plaintiff, provide the service that Lyft sells to the public.

16. Lyft says that it participates in the "transportation . . . market," and describes its business as "singularly focused on revolutionizing transportation." S-1 Statement at pp. 3-4.

17. Lyft earns money by providing its customers with a ride from point A to point B – a service that is wholly dependent on Lyft drivers, like Plaintiff.

18. Lyft's "business depends largely on [its] ability to cost-effectively attract and retain qualified drivers[.]" S-1 Statement at p. 10.

19. Lyft is not merely a platform or uninterested bystander between drivers and riders. As this Court has found, "Lyft concerns itself with far more than simply connecting random users of its platform. It markets itself to customers as an on-demand ride service, and it actively seeks out those customers. It gives drivers detailed instructions about how to conduct themselves. Notably, Lyft's own drivers' guide and FAQs state that drivers are 'driving for Lyft.'" Cotter v. Lyft, Inc., 60 F. Supp. 3d 1067, 1078 (N.D. Cal. 2015).

20. As part of Lyft's requirements, Plaintiff received training in how to interact with riders, as well as Lyft's expectations and practices.

21. Lyft also screens every driver, including Plaintiff, "before they are permitted to drive on [its] platform, starting with professional third-party background and driving record checks."

22. Lyft can terminate drivers' right to provide driving services for violating one or more of the rules that Lyft imposes by contract.

23. Plaintiff lacks business autonomy. Plaintiff is not engaged in an independently established business. Lyft requires riders to request rides and pay drivers through the Lyft App. Lyft tells drivers not to solicit riders' contact information and to reject riders' requests to drive them outside of the Lyft App. Plaintiff is dependent on Lyft to identify riders for him, he may not hire employees to assist him in providing services for Lyft, and he does not need to possess any particular or special skills other than those required to obtain a driver's license.

24. By working for Lyft, Plaintiff has not independently made the decision to go into business for himself. Lyft has unilaterally determined that drivers are an independent contractor while precluding them from taking the usual steps toward promoting and establishing independent businesses, such as forming business relationships with Lyft customers or otherwise promoting their services to the public.

25. Lyft also prohibits drivers from setting or in any way affecting the rates of pay for their own services. Lyft prohibits drivers from communicating with riders about future ride services.

26. Lyft requires drivers to use their own car or rent a car to provide rides for Lyft. Lyft requires that the car is not more than 8-9 years old, and it must pass automotive inspections as dictated by Lyft. Lyft also requires drivers,

including Plaintiff, to "only provide Services Using the vehicle that has been reported to and approved by Lyft.

27. Lyft controls the terms of employment. Lyft maintains uniform policies and terms of service with which all Lyft drivers, including Plaintiff, must comply. Once Plaintiff passed Lyft's initial requirements, he was able to work for Lyft for an indefinite period of time. However, Lyft may shut down Plaintiff's access to the Lyft App for myriad reasons, thus preventing him from obtaining and responding to ride requests.

28.. Plaintiff performs work for Lyft by logging into the Lyft App, making himself available for rides and visible to Lyft users, which benefits Lyft. While logged in, Plaintiff regularly receives ride assignment quickly, sometimes receiving a new ride before completing the existing ride. Plaintiff rarely waits more than 15 minutes between ending one ride and receiving a new ride assignment. On an average day, Plaintiff typically waits 3-5 minutes between completing one ride and accepting the next assignment. Once Plaintiff receives an assignment, Lyft allows him 15 seconds to accept the assignment. On information and belief, until the beginning of 2018, Lyft required that drivers accept at least 90% of ride assignments to avoid being terminated. Now, Lyft "use[s] acceptance rates to determine driver eligibility for certain features and help keep passenger wait times short." Lyft Help Center,

"Acceptance    Rate",    available    at    https://help.lyft.com/hc/en-u

s/articles/115013077708-Acceptance-rate (last accessed July 1, 2019). Lyft

calculates drivers' acceptance rates by adding the number of rides a driver

completes to the number of rides cancelled by the rider and dividing that

number by the total number of ride assignments shown to the driver. Lyft

explains that a driver's acceptance rate may decrease due to missed

assignments, such as when a driver lets the timer count down to zero, and by

driver cancellations. Lyft drivers are under pressure to keep their acceptance

rates high because Lyft bases eligibility for certain bonuses, awards, and other

benefits in part on a driver's overall acceptance rate, such as the weekly

"power drive bonus" – a weekly cash bonus given to drivers for completing a

certain number of rides. Ridester, "An Introduction to the Lyft Power Driver

Bonus", available at https://www.ridester.com/lyft-powerdriver-bonus/ (last

accessed July 1, 2019).

29. Lyft's manner of assigning rides – including the frequency of ride assignment

messages, the very short window within which a driver can accept rides, and

the threat of termination for failure to accept the vast majority of rides –

prevents Plaintiff from engaging in personal activities while logged into the

Lyft app.

30. Plaintiff logs out of the Lyft App at all times when he is not engaged in providing a ride for Lyft or making himself available for the next ride. When performing other types of work for Lyft, Plaintiff typically logs out of the App. For example, Plaintiff typically logs out when he pumps gas, performs vehicle maintenance and repairs, or uses the restroom. He schedules his work and personal activities to minimize the risk of missing ride assignments.

31. Lyft recognizes that drivers' time while logged into the App is not their own. Specifically, Lyft advises drivers to log out and take a break if they do not plan to accept ride assignments: "If you can't or don't want to accept ride requests, we recommend taking a break." Id.

B. Lyft's Misclassification of Drivers Violates the FLSA and Georgia Law.

32. Overtime and minimum wage. Lyft does not pay Plaintiff and drivers overtime for hours worked over eight in a day or over 40 in a week. Furthermore, although Lyft suffers or permits Plaintiff and drivers to log on to the Lyft App and make himself available to pick up rides, Lyft fails to pay them while they are logged on but not providing a ride. In this way, Lyft fails to pay the minimum wage for all hours actually worked and instead limits his drivers to a piece rate for each ride. Even limiting the calculation of minimum wage to the hours Plaintiff is engaged in providing a ride, Lyft fails to pay him a minimum wage for all hours worked.

33. Expense reimbursement. Plaintiff's and drivers' necessary expenses incurred as a direct consequence of the discharge of their duties for Lyft include mileage costs; car insurance; cell phone service to perform driving services, receive driving requests, and maintain required email and/or text message contact with Lyft; and car cleaning and repair to comply with Lyft requirements, among other expenses. Lyft does not reimburse Plaintiff and drivers for work related expenses.

34. Wage statements and time records. Lyft's wage statements do not clearly itemize earnings in such a way that Plaintiff and drivers can readily identify whether they received all pay for which they are eligible under the law, such as hours worked, overtime, and minimum wages. Payroll records similarly fail to track all pay accurately.

35. Willfulness. Lyft has continued to classify Plaintiff and drivers as independent contractors notwithstanding that its classification policy has been the subject of several lawsuits.

36. Plaintiff hired an attorney to solve the issues by arbitration, but defendant has refused to do so. (see Exhibit A)

## COLLECTIVE ACTION ALLEGATIONS

37. Plaintiff brings his FLSA Claim for Relief on behalf of himself and all
    Collective members defined above.

38. Lyft is liable under the FLSA for, inter alia, failing to properly compensate
    Plaintiff and the Collective. The FLSA claim in this lawsuit should be
    adjudicated as a collective action. Upon information and belief, there are
    many similarly situated current and former Lyft drivers who have been
    underpaid in violation of the FLSA who would benefit from the issuance of a
    court-supervised notice of the present lawsuit and the opportunity to join it.
    Those similarly situated drivers are known to Lyft, are readily identifiable,
    and can be located through Lyft's records. Notice should be sent to the FLSA
    Collective pursuant to 29 U.S.C. § 216(b).

## CLASS ACTION ALLEGATIONS

39. The plaintiff brings his claims on behalf of himself, and all others similarly
    situated pursuant to Federal Rule of Civil Procedure 23.

40. Numerosity. The Class is so numerous that joinder of all members is
    impracticable. Plaintiff is informed and believes, and on that basis alleges, that

during the class period Lyft has employed thousands of persons who satisfy
the definition of the Class.

41. Ascertain ability. The identity of Class members is ascertainable through
Lyft's records or by public notice.

42. Commonality and Predominance. Common questions of law and fact exist as
to members of the Class that predominate over any individualized questions,
including the following:

• Whether Lyft drivers are employees or independent contractors; • Whether
Lyft failed to reimburse Lyft drivers for work-related expenses; • Whether
Lyft failed to pay Lyft drivers' overtime; • Whether Lyft failed to pay Lyft
drivers the minimum wage for all hours worked; • Whether Lyft failed to
provide itemized wage statements; • Whether Lyft kept accurate payroll
records; • Whether Lyft failed to provide meal and rest breaks. • Whether
Lyft's classification of Lyft drivers as independent contractors was willful;
and • The proper measure of damages sustained by members of the Class.

43. Typicality. Plaintiff's claims are typical of Class members' claims. Plaintiff,
like other Class members, was subjected to Lyft's policies and practices that
violated the FLSA and Georgia law. Plaintiff's job duties and claims were and
are typical of those of the Class members.

44. Adequacy. Plaintiff will be having an attorney who fairly and adequately represents and protects the interests of the Class members.

45. Superiority. Class treatment would benefit the courts and Class members. Certification of the class would provide substantial benefits to the courts and Class members. The damages suffered by individual Class members are relatively small compared to the significant expense and burden of individual prosecution of this litigation. In addition, class certification will obviate the need for unduly duplicative litigation which might result in inconsistent judgments about Lyft's practices.

**FIRST CLAIM FOR RELIEF**

**(Minimum Wage Claim, 29 U.S.C. § 206** Brought by Plaintiff on Behalf of Himself and the Collective)

46. Plaintiff, on behalf of himself and all members of the Collective, realleges and incorporates by reference all other paragraphs as if they were set forth again herein.

47. At all relevant times, Lyft has been an employer and Plaintiff, and the Collective have been employees under Georgia and Federal law entitled to

the protections of the FLSA, the Georgia Labor Code, and Wage Order 9. 48. The foregoing conduct, as alleged, constitutes a violation of 29 U.S.C. § 206, which protects Plaintiff's and the Collective's right to earn a minimum wage and provides for damages and punishment for violations of that right. 49. In particular, the applicable minimum wage was $10.00 to $13.00 an hour, Plaintiff and the Collective regularly earned less than the minimum due to the significant deductions from pay that Lyft made for gasoline, car insurance, car financing, cleaning and maintenance, and cell phone usage, as well as the other expenses noted in above. These expenses resulted in hourly rates of well less than the minimum wage based on the hours that Plaintiff and the Collective worked.

50. Although Plaintiff and the Collective periodically did not earn at least the minimum wage, Lyft had a policy and practice of failing and refusing to pay them minimum wages for all hours worked and thus violated and continue to violate the above-referenced minimum wage protections.

51. Plaintiff seeks the amount of the respective unpaid wages owed him and the Collective, liquidated damages, attorneys' fees and costs pursuant to 29 U.S.C. §§ 201 et seq.and such other legal and equitable relief as the Court deems just and proper.

**SECOND CLAIM FOR RELIEF**                    **(Overtime Claim, 29 U.S.C. § 207        Brought by Plaintiff on Behalf of Himself and the Collective)**

52. Plaintiff, on behalf of himself and all members of the Collective, realleges and incorporates by reference all other paragraphs as if they were set forth again herein.

53. The foregoing conduct, as alleged, constitutes a violation of 29 U.S.C. § 207, which requires overtime pay for time worked over 40 hours in a week.

54. Although Plaintiff periodically worked more than 40 hours in a week, including during the weeks beginning December 11, 2017, and December 18, 2017, Lyft had a policy and practice of failing and refusing to pay him and similarly situated drivers' overtime and thus violated and continues to violate the above-referenced overtime provisions of the FLSA.

55. Plaintiff seeks the amount of the respective unpaid wages owed him and the Collective, liquidated damages, attorneys' fees and costs pursuant to 29 U.S.C. §§ 201 et seq.and such other legal and equitable relief as the Court deems just and proper.

**THIRD CLAIM FOR RELIEF**

**(Minimum Wage Claim)**

56. Plaintiff, on behalf of himself and all members of the Class, realleges and incorporates by reference all other paragraphs as if they were set forth again herein.

57. The foregoing conduct, as alleged, also constitutes a violation of the Georgia Labor Law, which similarly protect Plaintiff's and Class members' right to earn a minimum wage and provide for damages and punishment for violations of that right.

58. Plaintiff seeks the amount of the respective unpaid wages owed him and other Class members, liquidated damages, attorneys' fees and costs pursuant to Ga. Labor law.

## PRAYER FOR RELIEF WHEREFORE,

Plaintiff prays for relief as follows:

a. That the court issue permanent and injunctive relief against Respondent and that Respondent, his officers, agents, representatives, servants, employees, attorneys, successors.

b. An award of damages, an amount to be determined by the court.

c. Restitution in an amount to be determined by the court.

d. Reasonable attorneys' fees and costs of this action, including expert fees.

e. An Order certifying this case as a collective action in accordance with 29 U.S.C. 216(b) with respect to the FLSA claims set forth herein.

f. An Order declaring Defendant's violations of the FLSA were willful.

g.  An Order granting judgment in favor of Plaintiff and against Defendant and awarding Plaintiff and the FLSA Collective the full amount of damages and liquidated damages available by law;

h.  An Order awarding pre- and post-judgment interest to Plaintiff on these damages; and An Order awarding such other and further relief as this Court deems appropriate.

i.   Maximum Punitive damages to deter unlawful conduct and to effectuate the purposes of the FLSA. Award Plaintiff punitive damages against Defendant pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 215(a)(3) in an amount to be determined in the enlightened conscience of the jury to punish Defendants for its willful violation of Plaintiff's federal and State rights and deter such conduct in the future.

ARDALAN KARBASYOUN

3505 PALISADE LAKE DR

DULUTH, GA 30096

EMAIL: AKARBASYOUN@GMAIL.COM

CELL: 470-399-7200

IN THE SUPERIOR COURT OF GWINNETT COUNTY

STATE OF GEORGIA

Ardalan Karbasyoun

PLAINTIFF

VS

LYFT, INC

DEFENDANT

### VERIFICATION

I                                personally appeared before the undersigned Notary Public, and say

under oath that I am the ☐ Petitioner in the above-styled action and that the the facts stated in the

**COMPLAINT FOR DAMAGES**   are true and correct.

Address:

3505 PALISADE LAKE DR DULUTH, GA 30096

EMAIL: AKARBASYOUN@GMAIL.COM

NAME:   ARDALAN KARBASYOUN

Telephone number:  470-399-7200

Sworn to and subscribed before me, this

15  Day July 2025

NOTARY PUBLIC

My Commission Expires:

(Notary Seal)  7-24-2028

**General Civil and Domestic Relations Case Filing Information Form**

FILED IN OFFICE
CLERK SUPERIOR COURT
GWINNETT COUNTY, GA

☐ Superior or ☐ State Court of _____GWINNETT_____ County

2025 JUL 16  PM 3: 22

TIANA P. GARNER, CLERK

| For Clerk Use Only | |
|---|---|
| Date Filed _____ **MM-DD-YYYY** | Case Number _____ 25A 06471-4 |

**Plaintiff(s)**

Karbasyoun , Ardalan
Last    First    Middle I.    Suffix    Prefix

_____
Last    First    Middle I.    Suffix    Prefix

_____
Last    First    Middle I.    Suffix    Prefix

_____
Last    First    Middle I.    Suffix    Prefix

**Defendant(s)**

Lyft INC
Last    First    Middle I.    Suffix    Prefix

_____
Last    First    Middle I.    Suffix    Prefix

_____
Last    First    Middle I.    Suffix    Prefix

_____
Last    First    Middle I.    Suffix    Prefix

**Plaintiff's Attorney** _____    **Bar Number** _____    **Self-Represented** ☐

**Check One Case Type in One Box**

**General Civil Cases**

- ☐ Automobile Tort
- ☐ Civil Appeal
- ☐ Contract
- ☐ Garnishment
- ☑ General Tort
- ☐ Habeas Corpus
- ☐ Injunction/Mandamus/Other Writ
- ☐ Landlord/Tenant
- ☐ Medical Malpractice Tort
- ☐ Product Liability Tort
- ☐ Real Property
- ☐ Restraining Petition
- ☐ Other General Civil

**Domestic Relations Cases**

- ☐ Adoption
- ☐ Dissolution/Divorce/Separate Maintenance
- ☐ Family Violence Petition
- ☐ Paternity/Legitimation
- ☐ Support – IV-D
- ☐ Support – Private (non-IV-D)
- ☐ Other Domestic Relations

**Post-Judgment – Check One Case Type**

- ☐ Contempt
  - ☐ Non-payment of child support, medical support, or alimony
- ☐ Modification
- ☐ Other/Administrative

☐ Check if the action is related to another action(s) pending or previously pending in this court involving some or all of the same parties, subject matter, or factual issues. If so, provide a case number for each.

_____    _____
Case Number    Case Number

☑ I hereby certify that the documents in this filing, including attachments and exhibits, satisfy the requirements for redaction of personal or confidential information in O.C.G.A. § 9-11-7.1.

☐ Is an interpreter needed in this case? If so, provide the language(s) required. _____
Language(s) Required

☐ Do you or your client need any disability accommodations? If so, please describe the accommodation request.

_____

_____

Version 1.1.18